**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| | ) | |
| **RP MACHINE ENTERPRISES, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No.** |
| **v.** | ) | **05-40200-FDS** |
| | ) | |
| **UPS CAPITAL BUSINESS CREDIT,** | ) | |
| **f/k/a FIRST INTERNATIONAL BANK,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**MEMORANDUM AND ORDER ON**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**SAYLOR, J.**

This breach of contract action arises from a secured party transaction between plaintiff RP Machine Enterprises, Inc. and defendant UPS Capital Business Credit.  Specifically at issue is a secured party bill of sale, under which UPS contracted to sell the assets of Gould & Eberhardt Gear Machinery Corp. to RP for $700,000.  After RP made a partial payment on the contract, the United States Bankruptcy Court invalidated the sale, holding that UPS had failed to comply with the applicable notice requirements under the Uniform Commercial Code.  Although RP was ultimately able to purchase the assets, it did so at a substantially higher price of $1,126,500.

RP now contends that UPS's failure to convey good title to the assets constitutes a material breach of contract, and seeks to recover the difference between the initial contract price and the price it ultimately paid, as well as consequential damages.  Additionally, RP asserts claims of misrepresentation and unfair and deceptive trade practices in violation of Mass. Gen. Laws ch. 93A.

Currently pending before the Court is plaintiff's motion for summary judgment; defendant has not cross-moved  For the reasons set forth below, the motion will be denied.

## I.      Factual Background

The following facts are set forth in the light most favorable to UPS, the non-moving party.

### A.      UPS's Loan to G&E

In 2001, defendant UPS Capital Business Credit loaned $2.775 million to Gould & Eberhardt Gear Machinery Corp. ("G&E"), a manufacturer of gear-cutting machines based in Webster, Massachusetts.[1]  G&E executed two promissory notes, which were secured both by security interests in G&E's business assets (including machinery and equipment) and by real estate owned by Gerd Reinig, G&E's president and owner.  The United States Department of Agriculture ("USDA") guaranteed the promissory notes.

### B.      G&E's Default on the Loan

At some point after borrowing the money, G&E began having trouble making payments on the loan.  According to UPS, it attempted to work out a plan with G&E to allow the company to continue operating.  G&E's condition did not improve, however, by 2004 and UPS was forced to declare a default.

After discussions with the USDA (the loan guarantor), UPS decided in November 2004 that the G&E loan should be accelerated and that liquidation of the collateral was appropriate.  It sent notice of acceleration to G&E on December 8.  According to the notice, the balance owed on the promissory notes (with accrued interest) at that time was more than $2.75 million.

In January 2005, UPS asked G&E to execute a "Waiver of Notice Regarding Disposition

---

[1] Defendant UPS was formerly known as First International Bank.

of Collateral" so that it could sell the G&E assets.  The waiver purportedly gave UPS the right to

sell the property in which it held a security interest in "a commercially reasonable manner any time

on or after March 1, 2005," and indicated that G&E waived notice of any sale of the collateral "to

the extent required by Chapter 244 of Mass. General Laws."  Reinig voluntarily complied with

UPS's request and signed the waiver on behalf of G&E on January 7.  Around that time, UPS

also began the process under state law to foreclose on the real estate collateral.

### C.     RP's Purchase of the G&E Assets

According to UPS, discussions nonetheless continued with G&E concerning a business

alternative to foreclosure.  In the spring of 2005, Reinig contacted Christopher Ursini of UPS and

informed him that G&E had found a purchaser for the assets.  Richard Piselli, president of plaintiff

RP Machine Enterprises, Inc., then contacted UPS and offered $700,000 to buy G&E's

machinery and equipment as part of a joint venture that RP was allegedly pursuing with G&E.[2]

Because it believed a cooperative arrangement was in everyone's best interests, and

because RP's proposed purchase price exceeded both the forced liquidation value of G&E's

assets and G&E's remaining indebtedness to UPS, UPS verbally accepted RP's offer.[3]

Accordingly, on June 13, 2005, the parties entered into a secured party bill of sale, whereby UPS

agreed to transfer its interest in the G&E assets to RP for $700,000.[4]  UPS also signed an

---

[2] RP disputes this account, contending that it was Ursini who contacted Piselli to inquire whether RP was interested in the assets.  RP also denies that any representations were ever made concerning a joint venture with G&E.

[3] An appraisal performed by Joseph Finn Co., Inc., on December 17, 2004, estimated the forced liquidation value of the G&E assets to be $617,700.  After the proceeds from a May 11, 2005 foreclosure sale of the Reinig real estate were applied to the loan balance, G&E's remaining indebtedness to UPS was approximately $600,000.

[4] UPS contends that the sale agreement also contemplated that RP would pay $800,000 to G&E, for a total purchase price of $1.5 million.

intellectual property assignment.  According to UPS, it signed these documents in reliance on

RP's representations that the contemplated transaction was a cooperative arrangement with G&E,

and that absent such an arrangement, it would have put the assets up for auction.[5]

On June 15, RP wired a down payment of $243,000 to UPS.  Under the agreement, the

remaining balance was due by August 1, 2005.

### D.      RP's Alleged Bad Faith Conduct

Defendant alleges that on June 16, Piselli traveled from North Carolina to UPS's office in

Connecticut to obtain original copies of the secured party bill of sale and the intellectual property

assignment.  Shortly thereafter, on June 20, Reinig and Piselli met to discuss the terms of the

potential joint venture.  UPS contends that Reinig and Piselli prepared notes of an alleged

agreement, and that Piselli suggested that they submit the notes to their lawyers to draft a formal

contract.  Reinig then left for a business trip to Europe on June 24, apparently believing that an

agreement had been reached between RP and G&E.

According to UPS, on June 29, while Reinig was out of the country, Piselli and various

associates entered G&E's premises at 7:00 p.m. and seized G&E's assets.  Piselli allegedly waved

the original secured party bill of sale at the G&E employees and stated "I have purchased the

company."  RP then began removing the property, as the G&E employees attempted to contact

Reinig.

### E.      The Bankruptcy Proceeding

On July 1—and in apparent response to RP's sudden seizure of its assets—G&E sought

---

[5] There is also a dispute over what UPS expressly warranted in the agreement.  RP contends that UPS guaranteed title to *all* of the G&E assets, while UPS responds that it only guaranteed title against claims by third parties and only as to those goods voluntarily surrendered to it by G&E.

protection under Chapter 11 of the United States Bankruptcy Code.  On July 5, G&E filed a

"Motion to Turnover Assets" with the Bankruptcy Court, contending that the asset sale between

UPS and RP had not been conducted in a commercially reasonable manner.  In response, RP filed

a complaint and motion for preliminary injunction against G&E.

On July 7, United States Bankruptcy Judge Henry J. Boroff conducted a hearing on

G&E's turnover motion and plaintiff's motion for preliminary injunction.  During that hearing,

Judge Boroff examined the "Waiver of Notice Regarding Disposition of Collateral" that G&E had

executed on January 7, 2005.  He concluded that because the form stated that G&E waived notice

"to the extent required by Chapter 244 of Mass. Gen Laws"—rather than "including under

Chapter 244"—the waiver was limited *solely* to the notice required under Chapter 244.

Accordingly, it was insufficient to effect waiver of the notice required under the Massachusetts

Uniform Commercial Code.  *See* Mass. Gen. Laws ch. 106, § 9-611.  UPS's failure to comply

with the U.C.C.'s notice requirement rendered the sale of assets deficient and "insufficient to

properly convey title" to RP.

Based on this holding, the Bankruptcy Court granted G&E's turnover motion, but then

recognized that "the assets are back with the lender [UPS], who has the assets by virtue of a

voluntary surrender of the collateral for the purposes of disposition."  The Bankruptcy Court

thereafter ordered the appointment of a Chapter 11 Trustee in the case.

### F.      RP's Eventual Purchase of the G&E Assets

On July 28, after obtaining the assent of all interested parties, including RP, the Trustee

filed an assented-to motion to conduct a sale of G&E's non-real estate assets to RP for $700,000,

but with a provision allowing for counteroffers.  The Trustee thereafter received a counteroffer

for $735,000 from Asset Sales, Inc. of North Carolina.

The Bankruptcy Court subsequently scheduled a hearing on the sale, and RP and Asset

Sales were invited to submit sealed bids to the Court.  RP opposed the use of sealed bids,

apparently fearing that UPS would later claim that RP had engaged in overbidding.  The

Bankruptcy Court ultimately ordered a sealed bid sale over RP's objection.  RP was the winning

bidder for the assets, for a purchase price of $1,126,500.

## II.     Procedural History

RP filed the present action on November 3, 2005.  Its three-count complaint asserts claims

of (1) breach of contract; (2) material misrepresentation; and (3) unfair and deceptive trade

practices in violation of Mass. Gen. Laws ch. 93A.

On January 10, 2007, RP moved for summary judgment on all counts.

## III.    Analysis

### A.     Standard of Review

The role of summary judgment is "to pierce the pleadings and to assess the proof in order

to see whether there is a genuine need for trial."  *Mesnick v. General Elec. Co.*, 950 F.2d 816,

822 (1st Cir. 1991) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990)).  The

burden is upon the moving party to show, based upon the pleadings, discovery, and affidavits,

"that there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law."  Fed. R. Civ. P. 56(c).

The court must view the entire record in the light most hospitable to the non-moving party

and indulge all reasonable inferences in that party's favor.  *O'Connor v. Steeves*, 994 F.2d 905,

907 (1st Cir. 1993).

### B.        Breach of Contract Claim

Count 1 of the complaint alleges a claim for breach of contract.  As to the contract claim,
RP contends that there exists no genuine issue of material fact as to the following issues:  (1) that
a valid and enforceable contract—the secured party bill of sale—existed between the parties; (2)
that in that contract, UPS warranted good title to the G&E assets; (3) that UPS committed a
material breach of the contract when it failed to convey good title; and (4) that RP is now entitled
to recover as damages the difference between the contract price and the price it ultimately paid.

UPS contends, however, that under Massachusetts law, the disappointed purchaser in a
secured party sale has no claim for damages where that sale is subsequently invalidated by judicial
decree.  In support of that contention, UPS cites to several Massachusetts cases in which a
mortgagee held a foreclosure sale, that sale was later declared to be null and void, and the
disappointed purchaser was thereafter precluded from recovering under the voided contract.  *See
Bottomly v. Kabachnick*, 13 Mass. App. Ct. 480, 484 (1982) ("Because the first foreclosure sale
was void as a matter of law, the defendant cannot be found liable to the plaintiffs for breach of
contract."); *Levenson v. Cambridge Sav. Bank*, 258 Mass. 468, 469 (1927) ("The plaintiff cannot
hold the defendant for breach of a contract based upon her bid at the foreclosure sale, followed by
payment of the deposit required when that sale has been decided to be null and void in a suit in
which she was a party and the defendant has been prevented from performing the contract by
judicial decree.").  *Cf.  McGreevey v. Charlestown Five Cents Sav. Bank*, 294 Mass. 480, 484
(1936) ("The Appellate Division held that there had been no exercise of the power of sale, and no
actionable breach of any duty owed by the defendant to the plaintiff.").

RP responds that defendant's reliance on these cases is misplaced, as the foregoing rule is

limited solely to real estate foreclosures, and has no application to a sale of goods under the

U.C.C.  RP, however, misreads the relevant caselaw.

It is well-established under Massachusetts law that a "contract which is void ab initio, or

void from the beginning, may not be enforced.  No contractual duty exists, no breach of contract

is possible, and no judgment for money damages can be obtained under the contract."

*Massachusetts Mun. Wholesale Elec. Co. v. Town of Danvers*, 411 Mass. 39, 54-55 (1991).  *See*

*also Bernhardt v. Atlantic Fin. Corp.*, 311 Mass. 183, 191 (1942) ("[A void promissory note]

was a nullity, without any force and effect.  It was not binding upon the plaintiff.  Hence no

obligation of the plaintiff arose upon it.").  "When adjudicating rights between parties to a

contract that is void ab initio, courts treat the contract as if it had never been made."

*Massachusetts Mun. Wholesale Elec.*, 411 Mass. at 55.  Furthermore, Massachusetts courts have

applied this rule outside of the context of real estate foreclosure sales.  *See id.*  (applying the rule

to a power sales agreement that had been determined void by the Vermont Supreme Court);

*Bernhardt*, 311 Mass. at 191 (applying the rule to a promissory note and conditional sales

agreement which had been declared void).

Thus, in the cases cited by UPS, it was determined that, as the result of procedural

defects, the foreclosure sales at issue had been invalid from their inception.  *See Bottomly*, 13

Mass. App. Ct. at 483-84 ("[W]e hold that the first notice of sale was defective because it failed

to identify the holder of the mortgage, thereby rendering the first foreclosure sale void as a matter

of law."); *Levenson*, 258 Mass. at 469 ("The decree in equity conclusively established, as to all

parties to the suit, the invalidity of the foreclosure sale.").  The fact that the disappointed

purchasers were barred from recovering under the contracts was not due to the application of a

8

doctrine unique to the world of real estate, but rather due to a recognition that the sales were

effectively void *ab initio* and therefore without legal effect.  *See Bottomly*, 13 Mass. App. Ct. at

484 ("[T]he first foreclosure sale now in issue must be viewed as a nullity; it is as if no such sale

had been made.").  This basic contract principle applies with equal force to the secured party bill

of sale at issue here, and plaintiff has identified no authority suggesting otherwise.  Indeed, the

fact that this action involves a contract for the sale of goods, rather than a foreclosure sale, is

relevant only because it means that the U.C.C. governs whether the initial sale of G&E's assets

was void.[6]

The Court therefore concludes, based on the Bankruptcy Court's holding that the first

secured party sale was invalid as a matter of law, that defendant UPS cannot be found liable to RP

for breach of contract.  Summary judgment as to Count 1 will accordingly be denied.[7]

## C.    Material Misrepresentation Claim

In Count 2 of its complaint, RP asserts a claim for material misrepresentation.

Specifically, RP contends that UPS falsely claimed to be able to convey title to the G&E Assets to

RP.

To prevail on a claim of misrepresentation, the plaintiff "must allege and prove that the

defendant made a false representation of a material fact with knowledge of its falsity for the

purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon the

representation as true and acted upon it to [its] damage."  *Masingill v. EMC Corp.*, 449 Mass.

---

[6] That issue, however, is not presently before this Court, having been previously determined by the Bankruptcy Court.

[7] UPS raises a number of other defenses to the breach of contract claim.  In light of the above ruling, however, the Court does not reach these issues on summary judgment.

532, 540 (2007) (quoting *Kilroy v. Barron*, 326 Mass. 464, 465 (1950)).  However, "[t]he

speaker need not know 'that the statement is false if the truth is reasonably susceptible of actual

knowledge, or otherwise expressed, if, through a modicum of diligence, accurate facts are

available to the speaker.'" *Zimmerman v. Kent*, 31 Mass. App. Ct. 72, 77 (1991) (quoting

*Acushnet Fed. Credit Union v. Roderick*, 26 Mass. App. Ct. 604, 605 (1988)).

UPS contends that there exists a triable issue of fact as to whether it knew or should have

known that the "Waiver of Notice Regarding Disposition of Collateral" was deficient.  UPS

points to evidence that it had a valid security interest in the G&E assets; that it had a valid right to

sell those assets in order to satisfy G&E's debt; and that it provided a form of notice (the waiver)

that it had successfully utilized in previous transactions.

Because the Court is satisfied that there is an existing issue of fact as to whether defendant

knew or reasonably should have known that its notice to G&E was invalid, RP's motion for

summary judgment will be denied as to the misrepresentation claim.

### D.    Chapter 93A Claim

Finally, RP contends that UPS engaged in unfair and deceptive trade practices in violation

of Mass. Gen. Laws ch. 93A.  Under Chapter 93A, a person engaged in the conduct of trade or

commerce who has suffered a loss of money or property as the result of an unfair or deceptive act

may bring an action in court for damages and equitable relief.  *See* Mass. Gen. Laws ch. 93A, §

11.

It is well-established that "[a] mere breach of contract does not constitute an unfair or

deceptive trade practice under 93A, unless it rises to the level of 'commercial extortion' or a

similar degree of culpable conduct." *Commercial Union Ins. Co. v. Seven Provinces Ins. Co.*,

217 F.3d 33, 40 (1st Cir. 2000) (internal citations omitted); *Atkinson v. Rosenthal*, 33 Mass. App. Ct. 219, 226 (1992) (holding that absent a breach of contract with an "extortionate quality that gives it the rancid flavor of unfairness . . . a failure to perform obligations under a written lease, even though deliberate and for reasons of self-interest, does not present an occasion for invocation of c. 93A remedies"). Plaintiff contends that UPS's conduct rises to such a level "by its material misrepresentation regarding its right to sell the G&E assets and its ability to convey good title."

To the extent RP relies on its misrepresentation claim to establish Chapter 93A liability, there exists the same issue of material fact, discussed above, regarding whether defendant knew or should have known that its waiver of notice was deficient. In light of this disputed issue of fact, plaintiff is not entitled to summary judgment on its Chapter 93A claim.

## IV.    Conclusion

For the foregoing reasons, plaintiff RP Machine Enterprises, Inc.'s motion for summary judgment is DENIED.

**So Ordered.**

 /s/ F. Dennis Saylor IV
F. Dennis Saylor IV
United States District Judge

Dated: August 29, 2007

11